U.S. DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| ACADIA INSURANCE COMPANY, <br> Plaintiff, <br> <br> v. <br> <br> T. BUCK CONSTRUCTION, INC., <br> Defendant. | CIVIL ACTION NO.: <br> 2017- |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Acadia Insurance Company brings this action pursuant to RSA 491:22 and 28 U.S. Code § 2201 seeking a declaration of its claimed rights and responsibilities under a policy of insurance that it issued to T. Buck Construction, Inc. for a law suit that has been filed against it in the Merrimack Superior Court by the City of Concord arising out of T. Buck Construction's work for the City.

### THE PARTIES

1    Acadia Insurance Company (hereinafter "Acadia") is a Maine corporation with a principal place of business at 4 Bedford Farms in Bedford, New Hampshire.

2.    T. Buck Construction, Inc. ("T. Buck") is a New Hampshire corporation with a principal place of business in Turner, Maine. T. Buck does business throughout New Hampshire and has business locations in several cities in New Hampshire.

3.  This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332.

### STATEMENT OF FACTS

#### Underlying Claim

4.    T. Buck Construction is a defendant in a law suit that the City of Concord filed in the Merrimack Superior Court on November 8, 2016 seeking damages for

problems in connection with the Hall Street Wastewater Treatment Plant ("the Hall Street Plant"). A Copy of the City's Complaint is attached as Exhibit A to this Complaint for Declaratory Relief.

5. Also named as a defendant in the City's suit is Stantec Consulting Services f/k/a Fay Spofford & Thorndike, Inc. (hereinafter "Stantec") which was hired by the City in 2004 to study and correct odor emission problems at the Hall Street Plant (Complaint, Paragraph 15).

6. As the result of this investigation, Stantec issued a report to the City, recommending that a "bio-tower" be constructed and various bio-filter improvements be implemented at the Hall Street Plant (Paragraph 26).

7. The City alleges that it signed a contract with T. Buck Construction on September 28, 2012 to construct the "bio-tower" and implement the other "Phase II" improvements that Stantec had recommended (Paragraph 28).

8. The City alleges in its Complaint that plant employees observed condensation that was freezing on the exterior wall of the bio-tower during December 2013 (Paragraph 31).

9. The City was concerned that this frozen condensation would create a safety issue for personnel servicing the bio-tower (Paragraph 31).

10. The City also claims that air became stuck in a bio-filter at the Hall Street Plant during a performance test on July 22, 2014 (Paragraph 36).

11. On November 19, 2015, an internal inspection of the bio-filter is also claimed to have revealed "biological growths" in the stone bed for the bio-filter. (Paragraph 40).

12. The City's suit seeks recovery against T. Buck for breach of contract (Count II) and breach of warranty (Count IV). The suit also seeks recovery against Stantec for breach of contract (Count I), negligent rendering of professional services (Count III) and breach of warranty (Count IV).

13. The City's Complaint concludes that

> As a result of Stantec's and/or T. Buck's respective failure to satisfy their respective contractual and other duties, the City has been denied the benefit of the bargain it sought in contracting with Stantec and T. Buck to mitigate the odor issues at the Hall Street plant. The City has also been forced to incur additional costs to manage and remediate odors, and to investigate the causes of the ongoing odors. The City will also incur additional cost to evaluate and implement a solution to rectify the defective design and/or construction performed by Stantec and T. Buck respectively.

(Paragraph 45).

## The Acadia Insurance Policy

14  Acadia has provided commercial general liability ("CGL") insurance to T Buck Construction since April 1, 2013.

15. Acadia's coverage was first issued on April 1, 2013 as Policy No. CLA 5077473-10 and was renewed on April 1, 2014 as Policy No. CLA 5077473-11 and again on April 15, 2015 as Policy No. CLA 5077473-12. Copies of these policies are attached as Exhibits B, C and D to this Complaint for Declaratory Relief.

16. Coverage A to the policies' Commercial General Liability insurance part provides coverage for accidental bodily injury and property damage claims as follows:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of

-3-

"bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

      c.    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

      d.    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

          (1)    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

          (2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

          (3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

      e.    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

17.    The terms in quotation marks are defined in the policy as follows:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Property damage" means:

      a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

-5-

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. The Acadia policies contain certain exclusions that limit the scope of Coverage A.

19. Exclusion J.6 that these is no coverage for "property damage" to

   That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

20. Exclusion J goes on to state:

   Paragraph (6) of this exclusion does not apply to "property damage" included in the "products–completed operations hazard".

21. The Acadia Policies state that "Your work"

   a.    Means

       (1)    Work or operations performed by you or on your behalf;

       (2)    Materials, parts or equipment furnished in connection with such work or operations.

   b. Includes:

       (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

       (2)    The providing of or failure to provide warnings or instructions.

22. Exclusion L states that Coverage A does not apply to "property damage" to:

   "Property damage" to "your work" arising out of it or any part of it and included in the "products–completed operations hazard".

>   This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

23. The policies also contain various endorsements that modify the scope of this CGL coverage.

24. A "Limited Pollution Coverage – Work Sites" endorsement (Form AI CG 95 10 01) added a new Coverage D.

25. Pursuant to Coverage D, Acadia agreed that it would pay those sums that the insured becomes legally obligated to pay:

>   (1) As damages because of
>
>   >   (a) bodily injuries; or
>   >
>   >   (b) property damage, or
>
>   (2) As cleanup costs because of environmental damage which results in physical injury to tangible property.

26. Coverage D is subject to certain limitations, including Subsection b., which states that this insurance only applies if:

>   1. the bodily injury, property damage or environmental damage is caused by a pollution incident
>
>   >   (a) from a worksite in the coverage territory;
>   >
>   >   (b) that begins and ends within 72 hours; and
>
>   2. the bodily injury, property damage or environmental damage occurs during the policy period.

27. Additionally, Exclusion e. to Coverage D states that the insurance provided by this endorsement does not apply to property damage or environmental damage due to a "waste facility."

28. Exclusion (f) also states that Coverage D does not apply to

clean up costs or any other expense incurred by you or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants on or at… (1) a waste facility…

29. The Acadia policies also contain a Fungi or Bacteria Exclusion endorsement (Form CG 21 67 12 04) which states in pertinent part that the insurance did not apply to

a. fungi or bacteria (a) "bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria by any insured or by any other person or entity.

30. "Fungi" is defined in this endorsement as meaning "any type or form of fungus, including mold or mildew and any micro toxins, spores, scents or byproducts produced or released by fungi."

## CLAIMS FOR DECLARATORY RELIEF

### COUNT I
### (No "Property Damage")

31. Plaintiff realleges and incorporates by reference paragraphs 1 through 30 of this Complaint as if fully set forth herein.

32. In order for Coverage A of the Acadia Policies to apply, the claim against the insured must seek to impose liability on account of either "bodily injury" or "property

-8-

damage.

33. The City of Concord is not claiming any "bodily injury."

34. The City's claims that the bio-tower constructed by T. Buck Construction may be unsafe due the risk of frozen condensation is not a claim for "property damage" as that term is defined in the Acadia Policies.

35. The City's claim that "biological growths" are occurring in the stone bed of the filters in the bio-tower constructed by T. Buck Construction, Inc. have not caused property damage" as that term is defined in the Acadia Policies.

36. WHEREFORE, Plaintiff requests that this Court declare that its policies do not provide coverage for the City's claims against T. Buck Construction, Inc. inasmuch as the City's suit is not on account of any injury insured by these policies.

## COUNT II
### (No "Occurrence")

37. Plaintiff realleges and incorporates by reference paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38. In order for Coverage A of the Acadia Policies to apply, any "property damage" must result from an "occurrence."

39. Neither the City of Concord's claims against T. Buck Construction for breach of contract (Count II) or for breach of warranty (Count IV) constitute an "occurrence" as that term is defined in the Acadia Policies.

40. WHEREFORE, Plaintiff requests that this Court declare that its policies do not provide coverage for the City's claims against T. Buck Construction, Inc. inasmuch any "property damage" suffered by the City's suit is not the result of a covered "occurrence."

## COUNT III
### (Exclusion J.6)

41. Plaintiff realleges and incorporates by reference paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42. Exclusion J(6) states that there is no coverage for property damage to "that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it."

43. Insofar as the problems giving rise to the City's contention that T. Buck Construction's work at the Hall Street Plant may have been negligently or defectively performed may be deemed to constitute "property damage" that occurred after the insured's work was still ongoing, this exclusion applies.

44. WHEREFORE, Plaintiff requests that this Court declare that its policies do not provide coverage for the City's claims against T. Buck Construction, Inc. inasmuch as Exclusion J.6 excludes coverage for property damage arising out of the insured's work that occurs before the insured's operations are completed.

## COUNT IV
### (Exclusion L)

45. Plaintiff realleges and incorporates by reference paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46. Exclusion L states that the Acadia Policies do not cover "property damage" to "your work" arising out of it or any part of it and included in the "products–completed operations hazard" so long as the work was not performed on the insured's behalf by a subcontractor.

47. Some or all of the problems giving rise to the City's contention that T. Buck Construction's work at the Hall Street Plant may have been negligently or defectively performed occurred after the insured's work was completed.

48. WHEREFORE, Plaintiff requests that this Court declare that its policies do not provide coverage for the City's claims against T. Buck Construction, Inc. inasmuch as the policy excludes coverage for property damage arising out of the insured's work that occurs after that work is completed, as here.

## COUNT V
### (Fungi or Bacteria Exclusion )

49. Plaintiff realleges and incorporates by reference paragraphs 1 through 48 of this Complaint as if fully set forth herein.

50. The Fungi or Bacteria Exclusion in the Acadia Policies states that there is no coverage for

> (a) "bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
>
> (b) Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria by any insured or by any other person or entity.

51. In light of this exclusion, the Acadia Policies do not cover that aspect of the City of Concord's claims based on alleged "biological growths" in the filter system for the "bio-tower" at the Hall Street Plant.

52. WHEREFORE, Plaintiff requests that this Court declare that its policies do not provide coverage for the City's claims that T. Buck Construction, Inc. caused "biological growths" to develop in the filter system for the Hall Street Plant bio-tower.

## COUNT VI
### (Limited Pollution Coverage)

53. Plaintiff realleges and incorporates by reference paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54. The "Limited Pollution Coverage" provided by the Acadia Policies (Coverage D) requires that, in order to be covered, a pollution incident must begin and end within 72 hours.

55. Coverage D does not apply because the City's claim is not for property damage within the scope of its coverage.

56. Coverage D also does not apply between any pollution here did not begin and end within 72 hours.

57. Any claim under Coverage D is also barred because the Hall Street Plant is a "waste facility" subject to Exclusions E and F in this endorsement.

58. WHEREFORE, Plaintiff requests that this Court declare that the Limited Pollution Coverage in these policies does not provide coverage for the City's claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Acadia Insurance Company respectfully asks that this Honorable Court enter judgment in its favor, declaring that it owes neither a duty to defend nor a duty to indemnify T. Buck Construction, Inc. with respect to the underlying claims brought against it by the City of Concord in the Merrimack Superior Court and for such other and further relief as this Honorable Court may deem just and proper.

-13-

        Respectfully submitted,
        ACADIA INSURANCE COMPANY,
        By its attorneys,

        **MORRISON MAHONEY LLP**

        /s/ Michael F. Aylward
        Michael F. Aylward, NHBA #468
        250 Summer Street
        Boston, MA  02210
        (617) 439-7500

        /s/ Linda M. Smith
        Linda M. Smith, NHBA #265038
        Morrison Mahoney LLP
        1001 Elm Street, Suite 304
        Manchester, NH  03101

Dated:  April 13, 2017

Case 1:17-cv-00138-JD Document 1 Filed 04/13/17 Page 13 of 13